UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA M. BELL,

                       Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

DECISION & ORDER

19-CV-0453MWP

## PRELIMINARY STATEMENT

Plaintiff Tina M. Bell ("Bell") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## **DISCUSSION**

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that Bell had not engaged in substantial gainful activity since June 1, 2015, the application date. (Tr. 15-26).[1] At step two, the ALJ concluded that Bell had the severe impairments of left knee disorder with multiple surgeries, including total knee replacement, occipital neuralgia and migraine headaches, post-traumatic stress disorder ("PTSD"), and a mood disorder. (*Id.*). The ALJ also found that Bell suffered from hypertension, diabetes mellitus, hyperlipidemia, supraventricular tachycardia, Bell's palsy, and Ramsey Hunt syndrome, but that those impairments were nonsevere. (*Id.*). At step three, the ALJ determined that Bell did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that Bell retained the RFC to perform sedentary work with certain limitations. (*Id.*). Specifically, the ALJ found that Bell needed to change position to sitting or standing after thirty minutes of walking; could not climb ladders, ropes, or scaffolds, engage in balancing or driving activities, or work in proximity to bright or flickering lights, more than moderate levels of noise, unprotected heights, or dangerous machinery; could occasionally,

---

[1] The administrative transcript (Docket # 4) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

but not constantly, stoop, kneel, crouch, and crawl; needed to be limited to a low-stress work environment involving simple instructions and tasks, occasional interactions with supervisors, coworkers and the public, and minimal changes in work routine and processes, and requiring no supervisory duties, independent decision-making, or strict production quotas. (*Id.*). At steps four and five, the ALJ found that Bell had no past relevant work, but that, based on Bell's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that Bell could perform, such as bonder semi conductor, table worker, and surveillance systems monitor. (*Id.*). Accordingly, the ALJ found that Bell was not disabled. (*Id.*).

### III.     Bell's Contentions

        Bell contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 8, 11). Bell challenges the ALJ's RFC determination on the grounds that it was not supported by substantial evidence because the ALJ improperly evaluated two medical opinions contained in the record. (Docket ## 8-1 at 15-22; 11). Specifically, Bell contends that the ALJ's discounting of the medical source statement of consultative examiner Craig Zuckerman ("Zuckerman"), D. Ed., created an evidentiary gap in the record, which resulted in a mental RFC determination unsupported by any medical opinion and based solely on the ALJ's lay interpretation of the medical evidence. (Docket ## 8-1 at 15-19; 11 at 1-2). Next, she challenges the ALJ's physical RFC assessment on the grounds that it improperly relied upon a stale opinion authored by state consultative examiner Samuel Balderman ("Balderman"), MD, on November 12, 2015. (Docket ## 8-1 at 19-22; 11 at 2-3).[2]

---

[2] Balderman issued an earlier opinion dated December 10, 2014. (Tr. 562-65). Bell does not appear to challenge the ALJ's determination to give this opinion "little weight." (*See* Docket # 8-1 at 19-22).

**IV.     Analysis**

    **A.     The ALJ's Physical RFC Determination**

I turn first to Bell's argument that the ALJ's physical RFC determination was not supported by substantial evidence. (Docket ## 8-1 at 19-22; 11 at 2-3). This argument relies primarily on two related contentions: first, that Balderman's consultative opinion was stale in light of subsequent developments in Bell's medical record; and second, that, as a result, the record contained no useful assessment of Bell's functional abilities upon which the ALJ could have based her physical RFC determination. (*Id.*). Specifically, Bell contends that Balderman's examination was stale based on records showing that her knee impairment worsened after the examination resulting in several additional surgeries. (*Id.*).

On November 11, 2015, Bell presented to consultative examiner Balderman for an internal medicine examination, complaining of thoracic and lumbar spine pain, Ramsey Hunt syndrome, and left knee pain. (Tr. 833-36). By that time, Bell had been recovering for approximately nine months from a February 25, 2015 patellofemoral arthroplasty of her left knee, which required additional surgeries due to complications, including removal of a prepatellar bursa on August 3, 2015, and an elliptical excision with revision of her surgical scar on October 21, 2015, less than one month prior to the evaluation. (Tr. 825-32). These surgeries were performed by Bell's orthopedic surgeon, Peter J. Terhaar ("Terhaar"), DO. (*Id.*).

Balderman noted Bell's several-year history with left knee pain and her recent surgery. (*Id.*). Bell complained that she continued to experience pain that was constant, moderate, and sharp in her left knee. (*Id.*). With respect to activities of daily living, Bell reported that she was able to bathe and dress herself. (*Id.*).

On physical examination, Bell appeared in no acute distress, had a gait demonstrating a slight limp favoring her left side, could walk on heels and toes with difficulty and squat 30% of full, had normal stance, used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). Her cervical spine showed full flexion, extension, and lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Bell exhibited limited range of motion in her lumbar spine but a negative straight leg raise test. (*Id.*). She had full range of motion in her shoulders, elbows, forearms, and wrists, bilaterally, and full range of motion in her hips, right knee, and ankles. (*Id.*). Range of motion in her left knee was limited to 100 degrees, with thickening and mild tenderness observed. (*Id.*). Bell had no sensory deficit, full strength in her upper and lower extremities, and full grip strength, bilaterally. (*Id.*). Balderman diagnosed Bell with hypertension, diabetes, history of supraventricular tachycardia and Bell's palsy, obesity, status post left knee surgery, and lumbar spine pain, and opined that her prognosis was stable. (*Id.*). Balderman also opined that Bell had moderate limitation in repetitive bending and lifting, as well as "moderate to marked limitation [in] walking, kneeling, carrying, and climbing for four months, to allow for more complete surgical healing of the left knee." (*Id.*).

Bell received ongoing treatment to address issues with her left knee following Balderman's evaluation. In December 2015 and January 2016, she visited with Terhaar and Mohaned Al-Humadi ("Al-Humadi"), MD, another orthopedic surgeon, to address complaints of ongoing pain despite her surgery. (Tr. 1066-71, 1275-77). Imaging did not demonstrate any issues with her implant, and she was advised to follow up in approximately six months if her pain continued. (*Id.*).

7

Bell returned for treatment with Al-Humadi in April 2016, complaining of increased pain in her left knee. (Tr. 1273-74). Al-Humadi assessed that she had suffered a medial meniscus tear, which he surgically corrected on July 27, 2016. (Tr. 1172-74, 1269-72). After the surgery, Bell continued to complain of ongoing pain in her left knee, despite participating in physical therapy. (Tr. 1253-68). An MRI conducted in November 2016 demonstrated "significant artifact" and focal cartilage loss at the area of the medial femoral condyle. (Tr. 1255). Al-Humadi advised Bell that she should consider a total knee arthroplasty, as she had exhausted other treatment options. (*Id.*). In February 2017, Bell advised Al-Humadi that she was interested in pursuing the surgical treatment he suggested, and he referred her for a total knee replacement. (Tr. 1253). In the meantime, Al-Humadi immobilized Bell's left knee. (*Id.*).

On June 6, 2017, Nicholas Violante ("Violante"), DO, converted Bell's patella femoral replacement to a total knee arthroplasty. (Tr. 1146-48). Despite the surgery, Bell continued to seek treatment from both Violante and Al-Humadi for ongoing left knee pain, and underwent additional diagnostic procedures including x-rays and a guided ultrasound. (Tr. 1118-24, 1129-32, 1245-48). Given the complicated surgery that had been performed, Al-Humadi advised Bell to continue with physical therapy and strengthening exercises and to return if her problems continued to persist. (Tr. 1245). In March 2018, Bell met with Ashraf Henry, MD, a pain management specialist, for a consultation regarding her chronic leg pain. (Tr. 1317-20).

This documented history of Bell's left knee impairment, an impairment which the ALJ found to be severe at step two (Tr. 17), demonstrates a deterioration of Bell's condition subsequent to Balderman's November 2015 examination. In addition, the developments

pertaining to Bell's left knee plainly contradict Balderman's assessment that Bell would experience knee-related functional limitations for only four months following the November 2015 assessment. Rather, the medical records demonstrate that Bell continued to experience ongoing pain and impairments to her left knee, resulting in a surgical repair in July 2016 and a total knee replacement in June 2017.

Accordingly, I find that Balderman's examination and medical source statement are stale at least as they relate to Bell's left knee impairment. Indeed, "[i]n considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's deteriorating condition." *See McGrady v. Saul*, 2020 WL 2538483, *3 (W.D.N.Y. 2020) (collecting cases); *Whitsett v. Berryhill*, 2019 WL 156261, *4 (W.D.N.Y. 2019) ("[a] medical opinion may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision") (quotations omitted).

I am also unpersuaded by the Commissioner's argument that the ALJ's physical RFC finding properly accounted for the subsequent deterioration of Bell's left knee by assessing "greater and ongoing limitations" than those identified by Balderman "in light of the record evidence including her subsequent knee procedures." (Docket # 10-1 at 30). The ALJ purported to accommodate Bell's left knee impairment by precluding her from work that would require her to climb ladders, ropes, scaffolds or balance and limiting her to sedentary work involving only occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling, and which would permit her to change position to sitting or standing after walking for thirty minutes. (Tr. 20). As Bell points out, however, the ALJ arrived at these limitations without a medical

9

opinion and seemingly based upon her lay interpretation of the medical evidence and Bell's hearing testimony.  (Docket # 11 at 2-3).

As a general matter, although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (alteration and citation omitted).  "Accordingly, although the RFC determination is an issue reserved for the Commissioner, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' as a general rule, the Commissioner 'may not make the connection himself.'"  *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

Here, Bell experienced significant deterioration of her left knee after Balderman's examination, including a medial tear and deterioration requiring a total knee replacement; despite treatment records post-dating Balderman's evaluation, there are no medical records or opinions that provide a clear or useful assessment of the functional limitations associated with Bell's left knee impairment.  To the extent the ALJ relied on Bell's hearing testimony in formulating the RFC, the ALJ's RFC did not fully account for Bell's alleged limitations.  For example, the RFC permits Bell to stand and walk for up to two hours and sit for up to six hours of an eight-hour workday (Tr. 20), yet Bell testified that she was unable to stand for longer than fifteen minutes at a time and had difficulty sitting for longer than forty minutes (Tr. 48, 60), and the ALJ does not

explain this discrepancy.  Given that the treatment notes merely diagnosed Bell's left knee impairment and did not "relate those diagnoses to specific residual functional capabilities," it was error in this case for the ALJ to "make the connection [her]self."  *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862 at *9; *see McGrady v. Saul*, 2020 WL 2538483 at *4 ("[b]ecause [the consulting doctor's] opinion was stale, the ALJ could not rely on it[;] [c]onsequently, because [that] opinion was the only medical opinion upon which the ALJ relied, there is now a gap in the record necessitating a remand").

In sum, I conclude that the ALJ based at least some portions of her RFC finding on her own lay reading of the record and that the RFC is therefore not supported by substantial evidence.  Remand is thus required for the ALJ to obtain an up-to-date medical assessment of Bell's functional capacity in light of her several severe impairments.

### B. Bell's Remaining Contention

As noted above, Bell also contends that the ALJ improperly evaluated the opinion of consultative examiner Zuckerman, which resulted in a mental RFC determination unsupported by substantial evidence.  (Docket ## 8-1 at 15-19; 11 at 1-2).  However, because the Court has already determined that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue.  *See*, *e.g.*, *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 260-61 (W.D.N.Y. 2018) (collecting cases); *see also Rookey v. Comm'r of Soc. Sec.*, 2015 WL 5709216, *4 (N.D.N.Y. 2015) ("[b]ecause [plaintiff's] remaining contentions . . . may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture").

11

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and Bell's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       June 30, 2020